Filed 1/20/98 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1998 ND 10

Ohnstad Twichell, P.C.,                    Plaintiff and Appellee

       v.                                                        

Karen Treitline and

Curtis Suhr,                            Defendants and Appellants

Civil No. 970154 

Appeal from the District Court for Cass County, East Central Judicial District, the Honorable Cynthia A. Rothe-Seeger, Judge.

AFFIRMED.

Opinion of the Court by Neumann, Justice.

Michael D. Nelson (argued), of Ohnstad Twichell, P.O. Box 458, West Fargo, ND 58078-0458, for plaintiff and appellee.

David A. Garaas (argued), of Garaas Law Firm, 1314 23rd Street South, Fargo, ND 58103, for defendants and appellants.

Ohnstad Twichell, P.C. v. Treitline

Civil No. 970154

NEUMANN, Justice.

[¶1] Karen Treitline and Curtis Suhr appealed from a summary judgment awarding Ohnstad Twichell, P.C., $2,553.92 in legal fees plus interest.  We conclude summary judgment was appropriately granted, and we affirm.

I

[¶2] Gerald Suhr served as personal representative of the estate of his mother, Idella Suhr.  Gerald Suhr’s brothers are Curtis and Kenneth Suhr, and his sister is Karen Treitline.  Ohnstad Twichell served as attorney for the estate.  After Gerald Suhr distributed property to the devisees designated in the will and attempted to close the estate informally, Treitline and Curtis Suhr filed six motions attacking, among other things, proposed attorney fees and personal representative fees.  The probate court denied four of the six motions and advised the personal representative he could petition for discharge.

[¶3] Gerald Suhr petitioned for a formal order determining testacy and settling the estate.  He also requested approval of payment of $5,107.84 to Ohnstad Twichell, which represents closing fees, costs and additional attorney fees incurred by the estate in responding to the six motions filed by Treitline and Curtis Suhr.  A proposed order determining testacy and settling the estate included the following provision:

“There remains due and payable to Ohnstad Twichell, P.C., the attorneys for the Personal Representative, the following attorney’s fees and costs: $2,794.10 in Karen Treitline motion fees and costs, and $2,313.74 in closing fees and costs, for a total of $5,107.84, which are reasonable in amount.  This sum is and shall remain a claim against the estate.”

[¶4] The probate court signed the proposed order, but deleted the last sentence stating the law firm’s attorney fees would “remain a claim against the estate.”  The probate court, in its final discharge of the personal representative, also said Gerald Suhr “has paid all sums of money and delivered all property of said estate to the persons entitled thereto, . . .”  

[¶5] Because all estate assets had been distributed leaving no money in the estate to pay the legal fees, Ohnstad Twichell sued distributees Treitline and Curtis Suhr under N.D.C.C. §§ 30.1-21-04 (U.P.C. 3-1004) and 30.1-21-06 (U.P.C. 3-1006) for $2,553.92, one-

half of the attorney fees the probate court had found “reasonable” in its earlier order.  The other two residuary distributees, Gerald and Kenneth Suhr, had voluntarily paid their share of the outstanding attorney fees.  The judge, who was not the same judge who signed the formal order determining testacy and settling the estate, granted summary judgment for the law firm, and Treitline and Curtis Suhr appealed.

II

[¶6] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result.  
Ohio Farmers Ins. Co. v. Dakota Agency
, 551 N.W.2d 564, 565 (N.D. 1996).  On appeal, we review the evidence in the light most favorable to the party opposing the motion for summary judgment.  
Johnson Farms v. McEnroe
, 1997 ND 179, ¶2, 568 N.W.2d 920.

A

[¶7] In certain circumstances, distributees may be liable to claimants of an estate under N.D.C.C. § 30.1-21-04 (U.P.C. 3-1004):

“After assets of an estate have been distributed and subject to section 30.1-21-06, an undischarged claim, not barred, may be prosecuted in a proceeding against one or more distributees.  No distributee shall be liable to claimants for amounts received as exempt property, homestead or family allowances, or for amounts in excess of the value of the distributee’s distribution as of the time of distribution.  As between distributees, each shall bear the cost of satisfaction of unbarred claims as if the claim had been satisfied in the course of administration. . . .”

[¶8] The limitations on actions and proceedings against distributees are set forth in N.D.C.C. § 30.1-21-06 (U.P.C. 3-1006):

“Unless previously adjudicated in a formal testacy proceeding or in a proceeding settling the accounts of a personal representative or unless otherwise barred, the claim of any claimant to recover from a distributee who is liable to pay the claim, and the right of any heir or devisee, or of a successor personal representative acting in their behalf, to recover property improperly distributed or the value thereof from any distributee is forever barred at the later of:

“1. Three years after the decedent’s death.

“2. One year after the time of distribution thereof.

“This section does not bar an action to recover property or value received as the result of fraud.”

[¶9] The purpose of these provisions is explained in 1 
Uniform Probate Code Practice Manual
, at p. 394 (1977):

“Normally, of course, assets will not be distributed until all known claims are disposed of.  If partial or complete distribution occurs prematurely, this section adds meaning to the Section 3-101 concept that assets descend subject to claims.  Section 3-

1006 describes a personal liability to unpaid and unbarred creditors that is owed by distributees who are not protected by an adjudication that shows that what the distributees are receiving has been discharged of all creditors’ claims.”

B

[¶10] The appellants assert the trial court exceeded its jurisdiction when it entered summary judgment against them.  They argue because the attorney fees owed are administrative expenses of the estate and the estate has been closed, only the probate court had jurisdiction over the law firm’s action.  According to the appellants, there is a distinction between the probate and original jurisdiction of the district court, and here, the law firm invoked the district court’s original jurisdiction rather than the probate jurisdiction under N.D.C.C. § 30.1-12-05 (U.P.C. 3-105).  They rely on 
Kerrigan & Line v. Foote
, 5 Neb.App. 397, 558 N.W.2d 837, 841 (1997), where the court held:

“[T]he proper manner to obtain payment of a claim that has been allowed, but not paid, is to file a petition in the county court requesting an order that the personal representative pay the claim.  The code does not provide an alternative manner in which a claimant may seek payment of an allowed claim not yet reduced to an order.  Because there is no statute allowing an action for payment of an allowed claim not yet reduced to an order in a court other than the county court, the county court has exclusive original jurisdiction over such an action.”

[¶11] We reject the appellants’ argument.  First, unlike Nebraska, district courts in this state have had probate jurisdiction since county courts were abolished in 1995.  
See
 N.D.C.C. §§ 27-05-00.1 and 30.1-02-02; 1991 N.D. Sess. Laws Ch. 326.  Nebraska vests county courts with exclusive probate jurisdiction.  
See
 Neb.Rev.Stat. §§ 30-2209(5) and 30-2211 (1995).  Moreover, the appellants’ distinction between the probate and original jurisdiction of the district court is unpersuasive under the circumstances.  Even if the law firm invoked the “original jurisdiction” of the district court, subject matter jurisdiction can be conferred by statute, 
see
 
Kopperud v. Reilly
, 453 N.W.2d 598, 600 (N.D. 1990), and the probate code under N.D.C.C. § 30.1-

21-04 (U.P.C. 3-1004) specifically authorizes the procedure used by the law firm in this case.  The appellants’ argument the trial court lacked jurisdiction is without merit.

C

[¶12] The appellants assert the distribution approved in the formal order determining testacy and settling the estate was not “improper,” so the law firm cannot attack it in this separate proceeding.  The premise of their argument is, under N.D.C.C. §§ 30.1-20-08 (U.P.C. 3-908) and 30.1-20-09 (U.P.C. 3-909), a personal representative is limited to recovering distributed assets only if the distribution was “improper.”  They argue the law firm, as a claimant, also has no right against a distributee unless there has been an “improper” distribution.

[¶13] The appellants’ argument ignores N.D.C.C. §§ 30.1-21-04 (U.P.C. 3-1004) and 30.1-21-06 (U.P.C. 3-1006).  We interpret statutes to be in harmony, not to be in conflict.  
See
 
Nelson v. Gillette
, 1997 ND 205, ¶34.  The statutes cited by the appellants merely authorize a personal representative to recover assets from distributees if there has been an improper distribution and are not the exclusive method for recovering distributed assets.  Sections 30.1-21-04 (U.P.C. 3-1004) and 30.1-21-06 (U.P.C. 3-1006), N.D.C.C., also authorize claimants to obtain distributed assets from distributees under certain circumstances.  There is no conflict between the statutes.

D

[¶14] The appellants also assert summary judgment cannot be granted against them because the attorney fees were previously adjudicated by the probate court, and this action is barred under the doctrines of res judicata and collateral estoppel.  We reject this argument as well.

[¶15] The appellants’ argument centers on the contents of the probate court’s final orders approving distribution and discharging the personal representative.  They argue the probate court determined the estate was not responsible for the attorney fees, and that the law firm is not a claimant of the estate because the court determined all entitled persons had been paid by the estate.  According to the appellants, the law firm’s failure to appeal that order bars it from attacking the order in this separate proceeding, and the law firm’s sole recourse is to sue the personal representative in his individual capacity.

[¶16] The trial court’s approval of the $5,107.84 in closing fees, costs and additional attorney fees, coupled with the court’s deletion of the language making the attorney fees “a claim against the estate” and statement the personal representative had delivered all estate property “to the persons entitled thereto,” creates an ambiguity about the status of the additional attorney fees.  Where, as here, one court interprets the decree of another court, we review the interpretation de novo.  
Botner v. Botner
, 545 N.W.2d 188, 190 n.2 (N.D. 1996).

[¶17] In the order determining testacy and settling the estate, the probate court found the $5,107.84 was “reasonable in amount.”  Although the appellants argue there was no formal approval of the additional attorney fees because the court did not further find they benefitted the estate, a finding of reasonableness necessarily encompasses a determination the fees benefitted the estate.  
See
 
Matter of Estate of Flaherty
, 484 N.W.2d 515, 518 (N.D. 1992).  Attorney fees incurred forn the formal order was entered and the personal representative was discharged, there were no estate funds available to pay any estate debts.  We construe the probate court’s deletion of the language for a claim against the estate and its statement the personal representative had paid all estate sums and property to the persons entitled as a simple recognition that the estate had no assets to pay the additional attorney fees.  The probate court’s orders, construed together, do not constitute a determination the additional attorney fees are an invalid debt of the estate.

E

[¶19] The appellants assert the trial court’s reliance on N.D.C.C. §§ 30.1-21-04 (U.P.C. 3-1004) and 30.1-21-06 (U.P.C. 3-

1006) is misplaced because the request for additional attorney fees was previously adjudicated in a formal testacy proceeding and there was a formal proceeding settling the accounts of the personal representative.  In other words, the appellants argue because this action trails the previous adjudication on attorney fees, it comes too late.  We reject this argument.

[¶20] We interpret statutes to avoid absurd or ludicrous results.  
Raboin v. North Dakota Workers Compensation Bureau
, 1997 ND 221, ¶21.  The formal order determining testacy and settling the estate approved the requested attorney fees as reasonable while recognizing the estate had no assets to satisfy the debt.  The law firm prevailed in its request for fees.  The appellants’ argument would bar a proceeding under N.D.C.C. § 30.1-21-04 (U.P.C. 3-1004) to enforce a probate decree by claimants who not only had an unfavorable adjudication of their claim, but also by claimants who had a favorable adjudication of their claim.  We can think of no plausible reason why a successful claimant who had received a favorable determination would be barred from invoking the statutory procedure for collecting from distributees.  Barring claimants from collecting from distributees on favorable prior court rulings would also conflict with the intent of the probate code that assets descend subject to claims.  
Compare
 
Jones v. Billings County School Dist. #1
, 1997 ND 173, ¶15, 568 N.W.2d 477 (under the business corporation act, it was not legislature’s intent to grant creditors two years to enforce claims, but allow that right to be thwarted by quick dissolution of corporation and distribution of its assets without recourse against those assets).

[¶21] We conclude the phrase “undischarged claim” in N.D.C.C. § 30.1-21-04 (U.P.C. 3-1004), and the phrase “previously adjudicated” in N.D.C.C. § 30.1-21-06 (U.P.C. 3-1006), mean a claim must have been previously adjudicated against the claimant in order to bar the claimant from using the statutory procedure to collect from distributees.  Because the law firm’s claim was previously adjudicated in its favor and remained unpaid, it was not barred from using the statutory procedure to collect the additional attorney fees from the appellants.

F

[¶22] The appellants assert summary judgment was nevertheless inappropriate because there exist genuine issues of material fact.  They assert the attorney fees are actually the personal obligation of Gerald and Kenneth Suhr rather than a valid estate debt.  They also assert the law firm charged too much and the probate court did not rule whether the fees benefitted the estate.  As we have already noted, the probate court’s finding the additional attorney fees were reasonable necessarily includes a determination the fees were beneficial to the estate.  The probate court made its finding in a formal order determining testacy and settling the estate, which the appellants did not challenge in an appeal.  The finding of the reasonableness of the amount of fees is therefore res judicata, and the appellants cannot challenge it in this proceeding.  
See
 
generally
 
Hofsommer v. Hofsommer Excavating, Inc.
, 488 N.W.2d 380, 383 (N.D. 1992) (res judicata prohibits relitigation of claims or issues that were raised or could have been raised in a prior action resolved by judgment in a court of competent jurisdiction).  We conclude there are no genuine issues of material fact, and the trial court correctly entered summary judgment for the law firm.

III

[¶23] The summary judgment is affirmed.

[¶24] William A. Neumann

Mary Muehlen Maring

Herbert L. Meschke

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.