1999 ND 74

**Bonnie L. HILL, f/k/a Bonnie L. Weber, Plaintiff and Appellee,**

v.

**David E. WEBER, Defendant and Appellant**

**No. 980225.**

Supreme Court of North Dakota.

April 27, 1999.

Richard J. Linnerooth, Fargo, N.D., for plaintiff and appellee.

Arthur Warren Stokes, Wahpeton, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] David Weber appealed from the judgment and decree of the district court denying his motion for a new trial and ordering a change in custody. The district court changed custody of four minor children from the father to the mother because the father had repeatedly struck the children on the back of the head. Because the district court's finding that the father repeatedly struck his older daughter on the head with enough force to create a substantial risk of serious bodily injury is not clearly erroneous, we affirm.

I

[¶ 2] Bonnie and David Weber divorced in 1991 and split custody of their four children—the two daughters with her, and the two sons with him. In August 1993, the

daughters were left with their father, and in April 1994, the divorce judgment was amended, giving him custody of all four children. On January 2, 1998, based on affidavits of Bonnie Weber and the parties' older daughter, the district court issued an ex parte order changing custody of the daughters and setting a hearing for January 8, 1998.

[¶ 3] At the January 8, 1998, hearing, the older daughter, age 14, alleged abuse, testifying she was often struck on the back of her head by her father and told to get her duties done. She further testified her father would hit her as hard as he could with an open hand, and that he had been doing it since before the divorce. The mother testified the father had a history of abusing her and the children. The other children testified the older daughter's testimony was not completely true, and the only time the children were struck on the back of the head was when they were not paying attention or not obeying him. Each child testified David Weber has been a good father. He has never denied striking his children on the back or top of the head, and he testified he uses only a light slap, only to get the children's attention after having been ignored.

[¶ 4] The older daughter also testified by affidavit that David Weber allowed minors to drink at his house, and that she smelled marijuana smoke coming from her father's room. She also testified her father had taken an 18–year–old girl to the prom and had kissed the girl in the house in front of her, and that police had executed a search warrant at their house and had found a marijuana pipe, roach clip, and pot plants in their front yard.

[¶ 5] At the close of the hearing, the district court placed custody of all four children with the mother. The father moved for a new trial, arguing county social services found no indication of abuse, and arguing insufficiency of the evidence. The trial court denied the motion for a new trial.

[¶ 6] The father, David Weber, appealed from the judgment and decree of the district court, and from the order denying his motion for a new trial. The district court had jurisdiction under N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01. Bonnie Weber is now known as Bonnie Hill.

## II

[¶ 7] David Weber argues the district court erred in removing the children from his custody and placing them with Bonnie Weber.

[¶ 8] As the district court noted, our law on modification of custody changed as of August 1, 1997. N.D. Sess. Laws, ch. 149, § 1. We have articulated the standard for change in custody with various nuances over the years. The most recent formulation was:

> A court's analysis in considering whether to modify custody differs from its analysis when awarding original custody. *Delzer v. Winn*, 491 N.W.2d 741, 743 (N.D.1992). For a determination of an original custody award, only the best interests of the child are considered. N.D.C.C. § 14–09–06.1; *Ternes v. Ternes*, 555 N.W.2d 355, 357 (N.D.1996). But, when a party is seeking to modify a custody arrangement, a court applies a two step process. *Hagel v. Hagel*, 512 N.W.2d 465, 467 (N.D.1994). A trial court must determine: 1) Whether there has been a significant change of circumstances following the divorce and custody determination, and; 2) whether the changes of circumstances effect [sic] the child in such an adverse way that it compels or requires a change in the existing custody arrangement to further the best interests of the child. *Id.* at 467; *[Johnson v.] Schlotman*, 502 N.W.2d [831,] [ ] 834 [ (N.D.1993) ]; *Delzer*, 491 N.W.2d at 743; *Blotske v. Leidholm*, 487 N.W.2d 607, 609 (N.D.1992). The burden of proving these two elements is on the moving party. *Hagel*, 512 N.W.2d at 467. Not every change in circumstances will amount to a "significant change" warranting a change or modification of custody. *Ludwig v. Burchill*, 481 N.W.2d 464, 469 (N.D.1992) (Levine, J., concurring specially).

*Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 6, 562 N.W.2d 390. The law effective August 1, 1997, provides:

14–09–06.6. Limitations on postjudgment custody modifications.

1. Unless agreed to in writing by the parties, no motion to modify a custody order may be made earlier than two years after the date of entry of an order establishing custody, except in accordance with subsection 3.

2. Unless agreed to in writing by the parties, if a motion for modification has been disposed of upon its merits, no subsequent motion may be filed within two years of disposition of the prior motion, except in accordance with subsection 3.

3. The time limitation in subsections 1 and 2 does not apply if the court finds:

   a. The persistent and willful denial or interference with visitation;

   b. *The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development;* or

   c. The primary physical care of the child has changed to the other parent for longer than six months.

4. A party seeking modification of a custody order shall serve and file moving papers and supporting affidavits and shall give notice to the other party to the proceeding who may serve and file a response and opposing affidavits. The court shall consider the motion on briefs and without oral argument or evidentiary hearing and shall deny the motion unless the court finds the moving party has established a prima facie case justifying a modification. If a prima facie case is established, the court shall set a date for an evidentiary hearing.

5. The court may not modify a prior custody order within the two-year period following the date of entry of an order establishing custody unless the court finds the modification is necessary to serve the best interest of the child and:

   a. The persistent and willful denial or interference with visitation;

   b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

   c. The primary physical care of the child has changed to the other parent for longer than six months.

6. *The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:*

   a. *On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and*

   b. *The modification is necessary to serve the best interest of the child.*

7. The court may modify a prior custody order at any time if the court finds a stipulated agreement by the parties to modify the custody is in the best interest of the child.

8. *Upon a motion to modify custody under this section, the burden of proof is on the moving party.*

N.D.C.C. § 14–09–06.6 (emphasis added).

[¶ 9] This formulation replaces our previous formulation for cases decided August 1, 1997, and after. Although the legislative history reflects the statute was generally intended to codify our case law, *see Hearing on S.B. 2167 Before the Senate Judiciary Committee,* 55th N.D. Legis. Sess. (Jan. 21, 1997) (testimony of Sherry Mills Moore, Bismarck attorney), it contains some nuances we have not previously stated, and addresses some fact situations we have not previously addressed. Where the letter of the law is clear, we need not look further than the statutory language. N.D.C.C. § 1–02–05; *Jones v. Billings County School Dist. # 1,* 1997 ND 173, ¶ 11, 568 N.W.2d 477; *Adams County Record v. Greater North Dakota Ass'n,* 529 N.W.2d 830 (N.D.1995). Where the provisions of the statute differ from previous case law, the statute prevails. N.D.C.C. § 1–01–06; *see also Cermak v. Cermak,* 1997 ND 187, ¶ 9, 569 N.W.2d 280.

[¶ 10] The new statute, in paragraphs 1 and 2, continues a general requirement for two-year interludes between motions for

change of custody. Paragraph 3 makes clear the two-year wait does not apply in cases of risk to the children. Paragraph 6 continues, with refinements, the concept of a two-step analysis for changes of custody.

[¶ 11] Even though more than two years had passed since the last motion for change of custody, the district court looked to paragraph 3, and found the facts to meet the criteria of that paragraph. The district court then applied the new two-step analysis, concluding facts that meet the criteria of paragraph 3 constitute a material change in circumstances for the two-part change of custody test. The district court found the violence against the older daughter created a threat to her health and safety. We agree with the trial court, if the criteria of paragraph 3(b) are met, there is as a matter of law a material change of circumstances that warrants a change of custody under paragraph 6.

[¶ 12] The question then is whether the district court's findings are clearly erroneous. We will not set aside a trial court's finding of fact unless it is clearly erroneous. *Ternes v. Ternes*, 555 N.W.2d 355, 357 (N.D.1996). " 'A finding of fact is clearly erroneous if, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made, or if it was induced by an erroneous view of the law.' " *Quamme v. Bellino*, 540 N.W.2d 142, 145 (N.D.1995) (quoting *Mahoney v. Mahoney*, 516 N.W.2d 656, 661 (N.D.Ct.App.1994)). We give great deference to the trial court's opportunity to observe the witnesses and determine credibility. *Urlaub v. Urlaub*, 325 N.W.2d 234, 236 (N.D.1982) ("The trial judge was the trier of fact, and, as a corollary, the judge of the credibility of the witnesses. The trial judge is uniquely qualified to determine the credibility of a witness with regard to the truthfulness of the various facts to which the witness testified."); N.D.R.Civ.P 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). When wit-

nesses give conflicting testimony, we do not decide to believe a witness different from the one believed by the district court. *See, e.g., City of Fargo v. Lee*, 1998 ND 126, ¶ 7, 580 N.W.2d 580 (conflicts in testimony are resolved in favor of affirmance, recognizing the trial court is in a superior position to assess the credibility of witnesses and weigh the evidence). A fact finder need not believe the greater number of witnesses. *See State v. His Chase*, 531 N.W.2d 271, 274 (N.D.1995). Like a jury, the district court, acting as a finder of fact, is entitled to use common sense and general human experience and knowledge. *See State v. Lanctot*, 1998 ND 216, ¶ 16, 587 N.W.2d 568 (agreeing with the district court's "common-sense observation"); *Pavek v. Moore*, 1997 ND 77, ¶ 10, 562 N.W.2d 574 (the fact finder may use "common sense and experience").

[¶ 13] Here, the older daughter testified her father repeatedly hit her as hard as he could on the back of her head with an open hand, causing her pain. Although there was contrary testimony, the district court found the older daughter more credible than the other witnesses. The district court noted the general state of human knowledge that repeated hits to the head may cause injury. *See* Arthur C. Roberts, *The Value of Outcome Studies in Litigating Closed Head Injury Cases*, 30 Trauma 39 (1988). The finding of fact is supported by the testimony of the older daughter, and we will not substitute our judgment on credibility for that of the district court. The finding of fact is not clearly erroneous.

### III

[¶ 14] The father moved for a new trial on the grounds that the findings of the district court are not supported by the evidence, and that the county social services board had subsequently investigated the alleged conduct of the father and, in essence, found the allegations of the older daughter not credible.

[¶ 15] As discussed above, the findings of the district court are supported by the evidence.

**590**

[¶ 16] The county social services child protection team apparently interviewed some or all of the witnesses heard by the district court. The "team" apparently believed persons other than those believed by the district court. Where the district court has found the facts, a subsequent, different conclusion by a social service team is irrelevant. *See Schmaltz v. Schmaltz*, 1998 ND 212, ¶ 9, 586 N.W.2d 852 (the district court does not have to, and should not, regard a guardian ad litem's testimony and recommendation as conclusive); *see also In Interest of R.W.B.*, 241 N.W.2d 546, 555 (N.D. 1976) (a medical conclusion of a doctor does not invade the province of the court to make its determination on the ultimate question—whether or not to terminate parental rights).

### IV

[¶ 17] The judgment of the district court is affirmed.

[¶ 18] VANDE WALLE, C.J., and NEUMANN and KAPSNER, JJ., concur.

MARING, Justice, concurring in the result.

[¶ 19] It is well established in this Court's prior decisions that when a party is seeking to modify a custody order, the trial court must apply a two step analysis. *Mosbrucker v. Mosbrucker*, 1997 ND 72, ¶ 6, 562 N.W.2d 390. The trial court must determine "1) [w]hether there has been a significant change of circumstances following the divorce and custody determination, and 2) whether the changes of circumstances effect [sic] the child in such an adverse way that it compels or requires a change in the existing custody arrangement to further the best interests of the child." *Id.* (citations omitted).

[¶ 20] The Legislature recently enacted N.D.C.C. § 14–09–06.6(6), which governs modification of a prior custody order after the two-year period following the entry of that order. In this case, the last custody order was filed in April 1994 and the present motion was filed in January 1998, well past the two year period the statute requires before a custody modification motion can be made. N.D.C.C. § 14–09–06.6(6) provides:

6. The court may modify a prior custody order after the two-year period following the date of entry of an order establishing custody if the court finds:

a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

b. The modification is necessary to serve the best interest of the child.

This statutory provision merely codifies the two step analysis of our prior case law. *See Hearing on S.B. 2167 Before the Senate Judiciary Comm.*, 55th N.D. Legis. Sess. (Jan. 21, 1997) (testimony of family law practitioner Sherry Mills Moore). We have emphasized that " '[b]efore a change of custody can be deemed *necessary* for the best interests of the child, there must be some consideration of the effect of the change on the child.' " *Delzer v. Winn*, 491 N.W.2d 741, 744 (N.D. 1992) (quoting *Orke v. Olson*, 411 N.W.2d 97, 100 (N.D.1987) (emphasis added)). It is only that significant change in circumstance which "necessitates" or "requires" the change of custody in the best interest of the child. *Ramstad v. Biewer*, 1999 ND 23, ¶¶ 31–37, 589 N.W.2d 905 (Maring, J., dissenting); *Ludwig v. Burchill*, 481 N.W.2d 464, 469–70 (N.D.1992) (Levine, J., concurring specially).

[¶ 21] To the extent the majority opinion suggests that the two step analysis of the statute differs from the two step analysis set forth in our previous case law, I disagree.

[¶ 22] Mary Muehlen Maring